UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JAMES RAYNOR | : |
| | : |
| Plaintiff, | : No. 3:20-cv-1102(VLB) |
| | : |
| v. | : |
| | : March 31, 2022 |
| WARDEN ERFE, ET AL. | : |
| | : |
| Defendants. | : |
| | : |

**MEMORANDUM OF DECISION DENYING PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL [DKT. 15] AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. 23]**

This is a civil rights action brought under 42 U.S.C. § 1983 by James Raynor ("Raynor"), an inmate under the custody of the Connecticut Department of Corrections ("DOC"), against Warden Erfe, Unit Manager Darby, Dr. Ricardo Ruiz, Registered Nurses Shaniece Parker and Jan Ventrella, Medical Supervisor Destefeno and John Doe Director of Judicial Marshal Services. On January 25, 2021, the Court issued an Initial Review Order ("IRO") pursuant to 28 U.S.C. § 1915A reviewing Raynor's complaint, dismissing certain claims and permitting other claims to proceed. [IRO, Dkt. 9]. Raynor's claims that were permitted to proceed are: (1) that Warden Erfe and Unit Manager Darby were deliberately indifferent to Raynor's safety in allowing stairs within the facility to be slippery, which caused Raynor to fall and be injured; and (2) that Medical Supervisor Destefeno and Dr. Ruiz were deliberately indifferent to Raynor's medical needs in treating Raynor for injuries he sustained after falling on the stairs. [*Id.*].

1

**Before the Court are two motions.  First, Raynor has moved for appointment of counsel to represent him in this litigation.  [Mot. for Appt., Dkt. 15].  Second, Defendants have moved for summary judgment with respect to all claims arguing Raynor failed to exhaust his administrative remedies.  [Mot. for Summ. J., Dkt. 23]. In addition, Defendants argue summary judgment should be granted in their favor on the deliberate indifference to medical needs claim because Dr. Ruiz and Medical Supervisor DeStefano did not have the requisite personal involvement in Raynor's medical care, and, alternatively, Raynor has failed to establish the treatment he received for his injuries was not appropriate.  [*Id.*].   Raynor has failed to respond to Defendants' motion for summary judgment even after the Court afforded him additional time to respond.  [Order, Dkt. 26 (granting Raynor's motion for extension of time until October 4, 2021 to respond to Defendants' motion for summary judgment)].**

**After careful review of the pleadings, the Court DENIES Raynor's motion for appointment of counsel and GRANTS Defendants' motion for summary judgment.**

I.  BACKGROUND AND PROCEDURAL HISTORY

This decision addresses both Raynor's motion for appointment of counsel and Defendants' motion for summary judgment.  Thus, the Court will discuss the background and procedural history relevant to adjudicate both motions here.

Raynor's complaint alleges that on August 19, 2018—while confined at Cheshire Correctional Institution ("Cheshire")—he fell down a set of stairs within the facility, injuring his back and ankle.  [Compl. at 3; Dkt. 1].  Plaintiff alleges that the fall was because the floor did not have safety mats and had recently been

"mopped, painted, or even waxed." [*Id.*]. Following his fall, Raynor was escorted to the medical department to be treated for his injuries where he was provided with an ice pack for his ankle, medication to alleviate pain, and crutches. [*Id.* at 4]. The next day, Raynor was taken for x-rays of his ankle. [*Id.*]. Though he was told someone would follow up with him about his x-ray results, no one did. [*Id.*]. Raynor submitted a request on August 26, 2018 for an appointment to discuss his x-ray results. [*Id.*]. He was informed he was on a list to see the prison physician. [*Id.*].

In Defendants' Local Rule 56(a)1 Statement, to which Raynor did not object,[1] Defendants add that the x-ray results from the August 19, 2018 fall were evaluated by a radiologist and showed soft tissue swelling but no fracture or dislocation. [Defs.' Loc. R. 56(a) 1 ¶ 11, Dkt. 23-2]. The x-ray findings were consistent with an ankle sprain and there was no indication for an orthopedic evaluation or intervention. [*Id.* ¶ 11]. Dr. Ruiz opines that Raynor's injury was appropriately addressed with rest, ice, compress, and elevation of the limb. [*Id.* at ¶ 12]. Dr. Ruiz was not the treating provider who ordered or reviewed the x-rays, nor did he treat Raynor's ankle following the injury, rather a correctional nurse performed this treatment. [Dr. Ruiz Dec., Dkt. 23-11]. Contrary to Raynor's complaint allegations that Medical Supervisor DeStefano was involved, Defendant has established that Medical Supervisor DeStefano left his employment at Cheshire on August 16, 2018,

---

[1] "Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such facts are controverted by the Local Rule 56(a)2 Statement required to be filed and served by the opposing party in accordance with this Local Rule, or the Court sustains an objection to the fact."  Loc. R. Civ. P. 56(a)1.

which was three days prior to the August 19, 2018 incident. [Defs.' Loc. R. 56(a)1 ¶ 9].

Raynor alleges in his complaint that on September 7, 2018 he informed Unit Manager Darby that he had experienced injuries when he fell down the stairs and requested that safety measures be implemented to prevent future accidents. [Compl. at 5]. He alleges he did not receive a response to this request. [*Id.*].

As provided for in Defendants' Local Rule 56(a)(1) Statement, to which Raynor did not respond, on September 24, 2018, Plaintiff attempted to file a Level 1[2] grievance concerning the condition of the stairs, which allegedly caused his fall on August 19, 2018. [Defs.' Loc. R. 56(a)(1) ¶ 4]. The Level 1 grievance was rejected, because it was not filed within 30 days of the August 19, 2018 incident. [*Id.* ¶ 5]. On December 5, 2018, Raynor attempted to file a Level 2 grievance, which was rejected, because the Level 1 grievance was not properly filed within 30 days of the August 19, 2018 incident. [*Id.* at ¶ 6].

---

[2] DOC Administrative Directive 9.6(6), which addresses inmate administrative remedies, provides:
> Filing a Grievance. An inmate may file a [Level 1] grievance if the inmate is not satisfied with the informal resolution offered. The inmate shall attach CN 9601, Inmate Request Form, containing the appropriate staff member's response, to the CN 9602, Inmate Administrative Remedy Form. If the inmate was unable to obtain a blank CN 9601, Inmate Request Form, or did not receive a timely response to the inmate request, or for a similar valid reason, the inmate shall include an explanation indicating why CN 9601, Inmate Request Form, is not attached. The completed CN 9602, Inmate Administrative Remedy Form, along with any relevant documents, shall be deposited in the Administrative Remedies box. The grievance must be filed within 30 calendar days of the occurrence or discovery of the cause of the grievance.

[Defs.' Ex., AD 9.6].

**Prior to the filing of Defendants' motion for summary judgment, Raynor filed a motion for appointment of counsel. [Dkt. 15]. After the motion for summary judgment was filed, Raynor filed a letter to the Court asking for a status on his motion for appointment of counsel. [Dkt. 24]. Then, prior to the deadline for Raynor to respond to the motion for summary judgment, Raynor filed a motion for extension of time to respond stating he was waiting to hear back from the Inmate Legal Assistance Program ("ILAP"). [3] [Dkt. 25]. The Court granted Raynor's request for additional time. [Dkt. 26]. Over five months after the extended deadline to respond has passed and Raynor has yet to file a response.**

**II.     MOTION FOR APPOINTMENT OF COUNSEL [Dkt. 15]**

**Raynor has moved for appointment of counsel to assist him in this action. [Dkt. 15]. In his motion, Raynor indicates that he did not have access to a law library and was relying on the assistance of a "jail house lawyer," whom he did not trust. [*Id.*]. Raynor provided the names of three Connecticut attorneys he contacted for assistance, indicating none responded to his requests. [*Id.*]. In later filings, Raynor indicated he was working with the ILAP. [Dkt. 25].**

**Under 42 U.S.C. § 1915(e)(1), the Court "may request an attorney to represent any person unable to afford counsel[,]" although the Second Circuit has cautioned against the "routine appointment of counsel." *Cooper v. A. Sargenti Co.*, 877 F.2d**

---

[3] The Inmate Legal Assistance Program assists inmates in "identifying, articulating and researching legal claims and enabling inmates with access to the judicial system through advice, counsel and physical preparation of meaningful legal papers . . . ." See Administrative Directive 10.3, State of Connecticut Department of Corrections, available at: https://portal.ct.gov/-/media/DOC/Pdf/Ad/ad1003pdf.pdf (last visited Mar. 31, 2022).

170, 173–74 (2d Cir. 1989). Before appointment is even to be considered, the party seeking appointment must establish an inability to obtain counsel. *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986). Once established, a district court must "determine whether the indigent's position seems likely to be of substance." *See Id.* "Even where the claim is not frivolous, counsel is often unwarranted where the indigents chances of success are extremely slim." *Cooper*, 877 F.2d at 172. "If mere bald assertions by an indigent, which technically put a fact in issue and suffice to avert summary judgment, requirement appointment of an attorney under § 1915(d), the demand for such representation could be overwhelming." *Id.* In other words, a complaint that survives initial review under § 1915A does not mean the indigent's position is likely to be of substance warranting appointment of counsel. If the claims are sufficiently meritorious, the court should then consider other factors bearing on the need for appointment of counsel, including the movant's ability to investigate the factual issues of the case, whether conflicting evidence implicating the need for cross-examination will be the major proof presented, the movant's apparent ability to present the case, and the complexity of the legal issues involved. *See Hodge*, 802 F.2d at 6162.

Here, the Court finds that Raynor has failed to establish an inability to secure legal assistance or representation. While Raynor's motion provides names of three attorneys he claims to have reached out to, all of whom did not respond to his requests for assistance, Raynor also notes in later filings that he began to utilize the assistance of the ILAP. Raynor's briefing does not suggest ILAP has refused to assist Raynor or has otherwise failed to assist Raynor. Thus, Raynor has failed

to establish an inability to secure legal assistance or representation. *See Card v. Coleman*, No. No. 14-cv-830(SRU)(WIG), 2014 WL 6884041, at *1 (D. Conn. Dec. 4, 2014) (finding the plaintiff has not made sufficient efforts to secure legal assistance or representation on his own after failing to contact ILAP for assistance).

Even if the Court found that Raynor established an inability to obtain counsel, his motion for appointment of counsel would have been denied, because the Court is unable to find Raynor's claims are sufficiently meritorious to warrant appointment of counsel.

With respect to the deliberate indifference to safety claim against Warden Erfe and Unit Manager Darby, there is very little in the complaint to establish the subjective element of this claim aside from his general allegations that these defendants knew about the slippery stairs prior to the incident. In addition, it is not likely Raynor will be able to show anything more than mere negligence on the part of these defendants. Mere negligence will not suffice to establish a deliberate indifference to safety claim. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). *See also Hawkins v. Nassau County Correctional Facility*, 781 F. Supp. 2d 107 (E.D.N.Y. 2011) (dismissing the plaintiff's allegations that he fell in the shower area of the jail due to slippery floors).

With respect to the deliberate indifference to medical needs claim against Dr. Ruiz and Medical Supervisor DeStefeno, there is very little in the complaint to show that the treatment he received following his fall was inappropriate or lacking. To the contrary, the complaint admits that Raynor was quickly provided a diagnostic x-ray to view the injured area and he was provided with care in the form

of immediate attention, pain medication, ice to reduce swelling, and crutches. Raynor has not alleged that a more serious injury resulting from this fall has gone untreated or unaddressed. Meaning, it is not likely Raynor will succeed on his deliberate indifference to medical needs claim, because it appears he was provided appropriate medical care for the injury sustained.

Therefore, the Court denied Raynor's motion for appointment of counsel, because he has failed to establish an inability to obtain legal assistance or representation and the Court is unable to find that either of Raynor's claims are sufficiently meritorious to warrant the appointment of pro bono counsel.

III. MOTION FOR SUMMARY JUDGMENT [Dkt. 23]

Defendants have moved for summary judgment on all claims arguing Raynor failed to exhaust his administrative remedies prior to bringing this action. In addition, Defendants argue the deliberate indifference to medical needs claim must fail, because (1) the named defendants were not personally involved in Raynor's treatment for his injuries stemming from August 19, 2018, and (2) Raynor cannot establish the subjective element of his claim.

A. Standard of Review

When filing a motion for summary judgment, the moving party bears the burden of demonstrating "that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary

judgment). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

If a motion for summary judgment is supported by documentary evidence and sworn affidavits that demonstrate "the absence of a genuine issue of material fact," the nonmoving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted). *See also Welch-Rubin v. Sandals Corp.*, No. 3:03cv481, 2004 WL 2472280 (D. Conn. Oct. 20, 2004). Thus, the party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson*, 781 F.3d at 44.

In reviewing the record, the Court must "construe the evidence in the light most favorable to the non-moving party and to draw all reasonable inferences in its favor." *Gary Friedrich Enters., L.L.C. v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013) (citation omitted). *See also Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 151 (2000) ("[A]lthough the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe."). The Court may not, however, "make credibility determinations or weigh the evidence. . . . [because] [c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Proctor v. LeClaire*, 846 F.3d 597, 607–08 (2d Cir. 2017) (internal quotation marks and citations omitted). If there is

any evidence in the record from which a reasonable factual inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, however, summary judgment is improper. *See Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

### B. Exhaustion Requirement

Defendants argue that summary judgment is appropriate on all claims, because Raynor failed to exhaust his administrative remedies prior to bringing this suit. Raynor did not respond though he was given more than sufficient time to do so.

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA"), requires a prisoner to exhaust "administrative remedies as are available" before bringing an "action . . . with respect to prison conditions." This requirement applies to all claims pertaining to "prison life, whether they involve general circumstances or particular episodes." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion of available administrative remedies must occur regardless of whether the inmate may obtain the specific relief he desires through the administrative process. *See Booth v. Churner*, 532 U.S. 731, 741 (2001).

Additionally, an inmate must "proper[ly] exhaust[ ]" his or her administrative remedies, which includes complying with all "critical procedural rules," including filing deadlines, as set forth in the particular prison grievance system. *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006) (proper exhaustion "means using all steps that the agency holds out . . . (so that the agency addresses the issues on the merits) . . . [and] demands compliance with agency deadlines and other critical procedural

rules"). Consequently, neither "untimely" nor "otherwise procedurally defective attempts to secure administrative remedies" meet "the PLRA's exhaustion requirements." *Ruggiero v. County of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) (citing *Woodford*, 548 U.S. at 83-84).

While the exhaustion with administrative remedies is mandatory, a prisoner is only expected to exhaust those remedies that are "available." *Ross v. Blake*, 578 U.S. 632, 638–39 (2016). There are three circumstances in which an administrative remedy is not capable of use to obtain relief and an inmate's duty to exhaust available remedies does not come into play: (1) when an administrative remedy "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates," (2) when "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use," and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643–44.

Here, the Court finds that Raynor failed to exhaust his administrative remedies with respect to this deliberate indifference to safety claim but not with his deliberate indifference to medical needs claim. First, with respect to Raynor's deliberate indifference to safety claims, Raynor did not file a request relating to the conditions of the stairs until after the 30-day deadline to do so as required under DOC Administrative Directive 9.6. [Defs.' Ex. p.36, Dkt. 23-9 (inmate complaint signed by Raynor and dated on September 24, 2018)]. When DOC officials denied his Level 1 grievance for being untimely, Raynor did not deny the untimeliness of his initial grievance, rather he claimed the delay in filing was due to him waiting for

11

a response an informal request and health services requests he made relating to the incident. [*Id.* p.39–40]. Raynor's excuse for the untimeliness of his Level 1 grievance does not overcome the requirements for administrative exhaustion as set forth in the administrative directives, which plainly require inmates to make their Level 1 grievances within 30 days of the occurrence regardless of whether informal requests have been unaddressed. Thus, the uncontroverted evidence is that Raynor did not comply with the administrative remedies available to him. Because the PLRA exhaustion requirement is mandatory; *see Ruggiero*, 467 F.3d at 175; the Court finds Raynor failed to exhaust his administrative remedies with respect to the deliberate indifference to safety claim and Defendants are entitled to summary judgment on that claim.

However, the Court is unable to find that Raynor failed to exhaust his administrative remedies with respect to his deliberate indifference to medical needs claim. Raynor submitted a formal Inmate Administrative Remedy Form with respect to his medical injuries stemming from the August 19, 2018 fall on November 2, 2019. [Defs.' Ex., p.54; Dkt. 23-6]. Though this request was made more than a year after the incident, Administrative Directive 8.9 does not have a time requirement on when grievances must be submitted.[4] In addition, there is no

---

[4] DOC Administrative Directive 8.9, which addresses administrative remedies for health services complaints, requires an inmate to attempt to seek informal resolution health service complaints either face-to-face or through written request utilizing form CN 9601 Inmate Request Form. [Defs.' Ex., AD 8.9, subsection (9); Dkt. 23-4]. If the informal resolution is made by written request, a response is due from health services within 15 days.
> An inmate, who is dissatisfied with a diagnosis or treatment that pertains to him/herself, may apply for a Health Services Review if informal resolution via inmate request was unsuccessful. By utilizing

requirement under the administrative directives for health services review of diagnosis and treatment that the inmate appeal. The Court will not impose a timeliness condition on Raynor's health service review requests where the DOC has not done so in their own directives. Thus, it cannot be said that Raynor failed to comply with the administrative exhaustion requirement for his medical needs claim.

Therefore, the Court grants summary judgment to Defendants on the deliberate indifference to safety claim as Raynor has failed to exhaust his administrative remedies as required under the PLRA. The Court denies summary judgment to defendants on the deliberate indifference to medical needs claim on the theory that Raynor failed to exhaust administrative remedies. However, as discussed below, the Court grants summary judgment to Defendants on the deliberate indifference to medical needs claim for other reasons.

C. <u>Deliberate Indifference to Medical Needs Claim</u>

Remaining for consideration is Raynor's claim of deliberate indifference to medical needs by Dr. Ruiz and Medical Supervisor DeStefano. Defendants argue that Dr. Ruiz and Medical Supervisor DeStefano did not have the requisite personal involvement in Raynor's medical care. In addition, Defendants argue that Raynor

---

CN 9602 Inmate Administrative Remedy form an inmate shall check the 'Diagnosis/Treatment' box and explain concisely the cause of his/her dissatisfaction, and deposit the completed form in the Health Services Remedies/Review box. The inmate should provide a concise statement of what particular diagnostic or treatment decision he/she believes to be wrong and how he/she has been affected.
[*Id.* at subsection (11)].

was provided with appropriate medical treatment for his ankle injury, and, thus, his claim must fail. Again, Raynor did not respond to these arguments or present conflicting evidence.

In raising a section 1983 claim, the plaintiff must establish that "each Government-official defendant through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020) (citing to *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). The Eighth Amendment prohibits deliberate indifference to an inmate's serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976) ("[D]eliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment.") (internal quotation marks and citation omitted). To state a claim for deliberate indifference to a serious medical need, two elements must be met.

The objective element requires the inmate to assert facts to demonstrate that his or her medical need or condition is "a serious one." *Brock v. Wright,* 315 F.3d 158, 162 (2d Cir. 2003) (citations omitted). In determining whether a condition is serious, the Court considers whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citations omitted).

The second element is subjective. To meet this element, the inmate must allege that the prison official or medical provider was actually aware that his or her

actions or inactions would cause a substantial risk of serious harm to him. A difference of opinion between a medical provider and an inmate regarding a diagnosis or appropriate medical treatment does not constitute deliberate indifference. *See Chance,* 143 F.3d at 703 ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation.").

Here, the uncontroverted evidence is that Supervisor DeStefano was not personally involved in Raynor's medical treatment following the August 19, 2018 fall, because DeStefano left his employment at Cheshire prior to the incident. In addition, the uncontroverted evidence shows that Dr. Ruiz was not personally involved in the treatment of Raynor following the fall.  In other words, there is no evidence that Dr. Ruiz failed to treat Raynor's injuries. Thus, Raynor has failed to establish personal involvement by Dr. Ruiz and Medical Supervisor DeStefano in the alleged deliberate indifference to his medical needs and they are entitled to summary judgment on that claim.

The Court also would have granted summary judgment to Dr. Ruiz and Medical Supervisor DeStefano because the uncontroverted evidence shows that these defendants could not have been aware that anyone's actions or inactions would cause substantial risk of serious harm to Raynor because the treatment Raynor received following the fall was appropriate. Following Raynor's fall, he was treated by a correctional nurse who ordered x-rays of Raynor's ankle, provided him with pain medication and ice, and directed him to rest. Dr. Ruiz opines, as a

medical expert, that this treatment was sufficient considering the x-ray results showing only soft tissue swelling and no fracture or dislocation. Raynor has presented no evidence that this treatment was inappropriate in any way. Meaning, Raynor cannot establish the subjective element of a deliberate indifference claim against Dr. Ruiz and Medical Supervisor DeStefano, because there is no evidence of substantial risk of harm in the treatment Raynor received.

Therefore, the Court grants summary judgment to Defendants on the deliberate indifference to medical needs claim, because Raynor has failed to establish that Dr. Ruiz and Medical Supervisor DeStefano were personally involved in the alleged unconstitutional conduct and, alternatively, Raynor failed to establish the treatment he received was inappropriate.

IV.  CONCLUSION

For the above reasons, the Court grants Defendants' Motion for Summary Judgment. The Clerk is directed to enter judgment in favor of Defendants and close this case.

IT IS SO ORDERED.

                                      /s/
                               Hon. Vanessa L. Bryant
                               United States District Judge

Dated this day in Hartford, Connecticut: March 31, 2022